ORIGINAL

FILED
MAR 6 2014
U.S. COURT OF FEDERAL CLAIMS

#076337

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | 14- 188C <br> Civil Action No. _____ <br> Bid Protest |

## COMPLAINT

Plaintiff CliniComp International, Inc. ("CliniComp" or "CCI"), a Delaware corporation, files this Complaint against Defendant The United States of America ("United States" or "Government") and, pursuant to investigation and upon knowledge, information, and belief, for its complaint alleges as follows:

### PRELIMINARY STATEMENT

This is a suit for declaratory and injunctive relief. CliniComp brings this action to redress acts, findings, and conclusions of the United States that were arbitrary, capricious, an abuse of discretion, and otherwise not is accordance with law or without observance of procedures required by law. The controversy is centered around the United States Department of Veterans Affairs ("VA") making a determination that CliniComp's proposal in response to RFQ VA249-13-Q-1015/GSA RFQ828855 was "technically unacceptable." The VA has twenty-one Veterans Integrated Services Networks ("VISNs"). VISN 9 consists of portions of Tennessee, West Virginia, and Kentucky. VISN 9 issued RFQ VA249-13-Q-1015/GSA RFQ828855. The Request For Quotation ("RFQ") was for an unlimited, perpetual, non-exclusive software license for an Intensive Care Unit Clinical Information System ("ICU CIS") for seven VISN 9 medical treatment facilities. VISN 9 determined that CliniComp did not respond affirmatively with

regard to a mandatory requirement set out in Attachment D, System Specifications, Mandatory Requirements, Section 5.7.3 of the Statement of Work regarding receipt, importation, storage, and display of information. The decision by the United States was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, since CliniComp responded with a technically acceptable quote. Moreover, Plaintiff has previously provided compliant ICU CIS software to other VISNs. The VISN 9 contracting officer was aware of this fact which was too close at hand to ignore. In summary, the decision of the VISN 9 evaluators that the CliniComp quote was "technically unacceptable" was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## PARTIES

1. CliniComp is a privately-held Delaware corporation with its principal place of business in San Diego, California.

2. Defendant is the United States, acting by and through the United States Department of Veterans Affairs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction and venue over this action pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, §§ 12(a), (b), 110 Stat. 3870 (1996), codified at 28 U.S.C. § 1491(b).

## STANDING

4. CliniComp has standing to file this action because it was an actual offeror whose direct economic interest has been, and will be, adversely affected by the award of a contract to another offeror. CliniComp would have been selected for award of the contract (as it has for many others like it in the past) but for the wrongful actions and omissions of the Government.

5. CliniComp was one of the two offerors who responded to RFQ VA249-13-Q-1015/GSA RFQ828855.

6. The United States did not select CliniComp, who was the lowest bidder. (See Declaration of Mr. McDonald, Exhibit A, paragraph 23).

7. The United States awarded the contract to Picis, Inc., who was determined by the United States to be the offeror with the "Lowest Price Technically Acceptable." (See Declaration of Mr. McDonald, Exhibit A, paragraph 23).

8. CliniComp is an "interested party" pursuant to 28 U.S.C. § 1491(b)(1), because it submitted a quotation in response to solicitation RFQ VA 249-13-Q-1015 / GSA RFQ82885, and but for the fact that the United States lacked a reasonable basis for determining that CliniComp's quote was technically unacceptable, award would have been made to CliniComp as the lowest price offeror, with the only other bidder offering a price exceeding CliniComp's offer by more than $1.5 million, or about 49% higher.

9. CliniComp timely submitted an Agency Level Protest on October 7, 2013 (Exhibit A, hereto), which was dismissed in part and denied in part by VA's letter of January 24, 2014 (Exhibit A hereto), which was received by CliniComp on February 3, 2014.

### FACTUAL ALLEGATIONS

#### CLINICOMP

10. CliniComp is a privately-held corporation that develops mission critical electronic medical record solutions for hospitals, integrated delivery networks, academic medical centers and other acute care providers.

11. CliniComp's Essentris® EMR suite was originally built to meet the clinical workflow challenges of the most demanding critical care environments where it pioneered the integration of computer-based clinical documentation and medical device integration almost

### RFQ VA249-13-Q-1015 / GSA RFQ 828855

17.     Seeking to award a contract before end of the Federal fiscal year, on September 17, 2013, the VISN 9 Contracting Office in Murfreesboro, Tennessee issued solicitation, RFQ VA249-13-Q-1015. (See Declaration of Mr. McDonald, Exhibit A paragraph 5).

18.     Although other VISNs acquired ICU CISs based on best value, the VISN 9 RFQ made the evaluation criteria award to the lowest price technically acceptable offer.

19.     The RFQ requested quotes for the VISN 9 ICU CIS Project, a project to provide clinical information systems for the intensive care units with the Department of Veterans Affairs MidSouth Healthcare Network (VISN 9). VISN 9 is an integrated healthcare delivery system comprised of seven medical centers in West Virginia, Kentucky, and Tennessee.

20.     RFQ VA249-13-Q-1015 was a request for quotes to furnish unlimited, perpetual, non-exclusive, software and interface licenses for Intensive Care Unit Clinical Information System ("ICU CIS") for seven VISN 9 medical treatment facilities.

21.     The RFQ consisted of a 66-page narrative Statement of Work (SOW) and 12 separate attachments. Overall, the solicitation contained hundreds of technical requirements.

22.     The solicitations issued by thirteen other VA VISNs for ICU CISs since 2009 included similar, national requirements mandated by VHA. Of those thirteen other solicitations, CliniComp has won a majority of the awards.

23.     Before the submission time of 5:00 pm on September 25, 2013, CliniComp timely responded to RFQ VA249-13-Q-1015 / GSA RFQ 828855 with its proposal.

### THE DISPUTE

24.     Section 5.7.3 of the System Specification stated:

| 5.7.3 | | Display and store waveforms from patient monitors | Vendor shall demonstrate product will receive and import digital images of waveforms as well as document all wave forms produced by both the physiological patient monitor and the peripheral devices used in VISN 9. Wave forms shall be recorded not only as data points but also as a viewable wave form. The viewable wave forms are to be saved in CPRS as part of the patient record. |
|---|---|---|---|

25. CliniComp's Proposal responded to section 5.7.3 as follows:

> "Yes. Waveforms from bedside devices are streamed continuously to CCI data acquisition equipment. This data subsequently can be saved permanently on the CIS. If the VA wishes to redundantly export waveform data to CPRS, a quotation could be provided. This quotation would require mutually agreed upon specifications."

26. The day after proposals were received, the VISN 9 contracting officer opened discussions by telephonically asking questions to Mr. Rocky McDonald, CliniComp's Director of Finance. (See Declaration of Mr. McDonald, Exhibit A, paragraph 10).

27. In his September 26, 2013 email, Mr. McDonald responded to the question concerning Section 5.7.3 as follows:

> Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record. If the VA requires the patient record, including "viewable waveforms" to be sent to the CPRS, then DSS is the only currently approved methodology to do so. DSS does not presently support an interface to receive "viewable waveforms" contained in the patient record. If VISN 9 arranges for DSS to provide any interface, based on mutually agreeable standard technical specifications, then CliniComp, Intl. will provide for sending the waveforms in the patient records to DSS for transmittal to CPRS. This interface would be made available at no additional cost to the VISN. Alternatively, CliniComp, Intl. could develop an interface directly to CPRS if authorized by the VA. This was the alterative being addressed in CliniComp, Intl. original response. This would require mutually agreed upon specifications and a quotation for additional costs, depending on the specifications. For example, CliniComp, Intl. could provide, at no charge, the ability to export "viewable waveforms" as PDFs. Again, this is assuming that VA approves a direct interface to receive PDFs.

See Declaration of Mr. McDonald, Exhibit A, paragraph 14.

28. CPRS is an acronym. According to the solicitation, CPRS means "Computerized Patient Record System, a graphic user interface (GUI) to display Vista patent information." RFQ at p. 27.

29. In interpreting the single sentence in 5.7.3 which states "[t]he viewable wave forms are saved in CPRS as part of the record," VISN 9 adopted a latent, literalist interpretation.

30. A literal interpretation is nonsensical because the CPRS is a GUI. Data cannot be saved to a GUI. See Expert Statement of Dr. Rosendale, Exhibit B ("CPRS is a GUI on VistA. CPRS is a user interface to VistA, which is the official "System of Record" for patient records. As one would expect of a GUI, no permanent data about a patient is stored or saved directly to CPRS per se, but rather the GUI provides the user means for viewing the patient data in VistA.")

31. VA decided CliniComp's "quote was rated Technically Unacceptable because [CliniComp's] responses in section 5.7.3 of [CliniComp's] quote did not meet the mandatory requirements provided in section D of the RFQ." (See Declaration of Mr. McDonald, Exhibit A, Exhibit 1.

32. CliniComp filed an agency-level protest. (See Declaration of Mr. McDonald, Exhibit A, Exhibit 3). In denying the agency-level protest, the VA took the position that "based on the response provided to Section 5.7.3," CliniComp "took exception to the Agency's requirements." (See Declaration of Mr. McDonald, Exhibit A paragraph 26).

## CAUSES OF ACTION

### Count I: The VISN 9 Determinations Of "Technically Unacceptable" And "Took Exception" Were Arbitrary, Capricious, And An Abuse Of Discretion

33. CliniComp realleges the preceding factual allegations as if fully set forth herein.

34. The determination of "technically unacceptable" by VISN 9 was arbitrary, capricious, and an abuse of discretion. In its proposal, CliniComp said "Yes" that its ICU CIS

complied with Section 5.7.3. In discussions, CliniComp made clear that its ICU CIS would save viewable wave forms. Specifically, ClinComp informed VISN 9 that "Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record." (See Declaration of Mr. McDonald, Exhibit A paragraph 14).

35. The determination of "took exception" by VISN 9 was arbitrary, capricious, and an abuse of discretion. In its proposal, CliniComp said "Yes" that its ICU CIS complied with Section 5.7.3. In discussions, CliniComp made clear that its ICU CIS would save viewable wave forms. Specifically, ClinComp informed VISN 9 that "Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record." (See Declaration of Mr. McDonald, Exhibit A paragraph 14).

36. The VISN 9 contracting officer was aware that Plaintiff has previously provided compliant ICU CIS software to other VISNs. This information was too close at hand for VISN 9 to ignore thus contributing to the arbitrary, capricious and abuse of discretion in finding CliniComp's proposal as technically unacceptable and that CliniComp took exception.

### Count II: The Decision Of The VISN 9 Contracting Officer To Have A Competitive Range Of One Offeror Cannot Withstand The Close Scrutiny Imposed Under The Competition In Contracting Act

37. CliniComp realleges the preceding factual allegations as if fully set forth herein.

38. The determination that CliniComp's proposal was technically unacceptable resulted in a competitive range of one offeror.

39. The Competition In Contracting Act requires procurements to "obtain full and open competition through the use of competitive procedures." 41 U.S.C. 3301(a)(1).

8

40. Because a competitive range of one is inconsistent with the statutory requirement to obtain full and open competition, case law subjects such decisions to close scrutiny.

41. The decision of the VISN 9 Contracting Officer to have a competitive range of one offeror cannot withstand close scrutiny and thereby violates the Competition In Contracting Act.

**Count III: VISN 9 Contracting Officer Did Not Engage In Meaningful Discussions**

42. CliniComp realleges the preceding factual allegations as if fully set forth herein.

43. The issue date on RFQ VA249-13-Q-1015 is Sept. 17, 2013.

44. Offers were required to be submitted no later than Sept. 25, 2013 at 5:00 PM; only eight days after the FQ was publicly released.

45. Other VISNs that have acquired ICU CISs have allowed offerors 30 days or longer to submit offers.

46. At no time during discussions did the VISN 9 Contracting Officer tell CliniComp of VISN 9's actual concern that CliniComp had submitted a technically unacceptable proposal with regard to Section 5.7.3. (See Declaration of Mr. McDonald, Exhibit A, paragraph 18).

47. At no time during discussions did the VISN 9 Contracting Officer tell CliniComp of VISN 9's actual concern that CliniComp had taken exception to Section 5.7.3. (See Declaration of Mr. McDonald, Exhibit A, paragraph 19).

48. If the VISN 9 Contracting Officer had told CliniComp of VISN 9's actual concerns, CliniComp would have removed any language in its proposal that formed the basis for

the VISN 9 perception that CliniComp had taken exception to Section 5.7.3. (See Declaration of Mr. McDonald, Exhibit A, paragraph 20).

49. Because the VISN 9 Contracting Officer did not tell CliniComp of VISN 9's actual concerns pertaining to Section 5.7.3, the VA did not engage in meaningful discussions.

**Count IV: It Was An Abuse Of Discretion For The VISN 9 Contracting Officer To Abruptly and Prematurely Terminate Discussions In Light Of The Fact That The VA Paid A 49% Premium Instead Of Selecting Plaintiff's ICU CIS That The Contracting Officer Knew Has Been Deemed Technically Acceptable By Other VISNs**

50. CliniComp realleges the preceding factual allegations as if fully set forth herein.

51. Under the evaluation criteria, award was to be made to the lowest price technically acceptable offeror.

52. The Picis offer was more than $1,500,000 more expensive than the CliniComp offer. The VA paid a 49% premium for the Picis offer vis-à-vis the CliniComp offer.

53. A factor in the decision not to pursue discussion was a lack of procurement planning resulting in the VA rushing to award the contract before the end of the Federal fiscal year.

54. The RFQ Contracting Officer knew that the ICU CIS proposed by CliniComp has been deemed technically acceptable by other VISNs. (See Declaration of Mr. McDonald, Exhibit A, paragraph 5).

55. The VISN 9 Contracting Officer had agreed to pursue further telephonic discussions concerning CliniComp's response to Section 5.7.3. (See Declaration of Mr. McDonald, Exhibit A, paragraph 13).

56. Notwithstanding having agreed to further telephonic discussions, the Contracting Officer abruptly and prematurely terminated discussions. According to the Contracting Officer, he did so because the evaluation "board read your answers and feels it has sufficient information based on your responses." (See Declaration of Mr. McDonald, Exhibit A, paragraph 17).

57. Based on the totality of the circumstances (to include that the VA paid a 49% premium in its rush to enter into a contract before the end of the federal fiscal year), it was an abuse of the discretion for the Contracting Officer to have abruptly and prematurely terminated discussions rather than honoring his commitment to a follow-on telephone conference call concerning Section 5.7.3.

### Count V: By Relaxing The Requirement For Picis That The Wave Forms Are To Be Saved To The CPRS GUI But Not For CliniComp, VISN 9 Engaged In Unequal Treatment

58. CliniComp realleges the preceding factual allegations as if fully set forth herein.

59. CPRS is an acronym. According to the solicitation, CPRS means "Computerized Patient Record System, a graphic user interface (GUI) to display Vista patent information." RFQ at p. 27.

60. Wave forms cannot be saved to a GUI. See Expert Statement of Dr. Rosendale, Exhibit B ("CPRS is a GUI on VistA. CPRS is a user interface to VistA, which is the official "System of Record" for patient records. As one would expect of a GUI, no permanent data about a patient is stored or saved directly to CPRS per se, but rather the GUI provides the user means for viewing the patient data in VistA.")

61. In awarding the contract to Picis, VISN 9 relaxed the requirement that wave forms are to be save to the CPRS GUI

62. By relaxing the requirement that the wave forms are to be saved to the CPRS GUI for Picis but not for CliniComp, VISN 9 has engaged in unequal treatment.

63. Unequal treatment of the offerors violates the Competition In Contracting Act requirement to "obtain full and open competition through the use of competitive procedures." 41 U.S.C. 3301(a)(1).

### Count VI: Declaratory Judgment

64. CliniComp realleges the preceding factual allegations as if fully set forth herein.

65. A justiciable controversy exists between CliniComp and the Government concerning the propriety and reasonableness of the VA's acts and omissions.

66. This actual and justiciable controversy relating to the legal rights and duties of the parties caused by the Government's arbitrary and capricious acts is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

67. CliniComp seeks a declaration that:

- VA's decision that CliniComp's quote was technically unacceptable lacked a reasonable basis; and

- VA's decision that CliniComp was not the lowest price offeror with a technically acceptable bid lacked a rational basis.

- VA's actions, findings, and conclusions were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

- The decision of the VISN 9 Contracting Officer to have a competitive range of one offeror cannot withstand close scrutiny and therefore violates the Competition In Contracting Act.

- The VISN 9 Contracting Officer did not engage in meaningful discussions.

- It was an abuse of discretion for the VISN 9 Contracting Officer to abruptly and prematurely terminate discussions in light of the fact that the VA paid a 49% premium instead of selecting Plaintiff's ICU CIS that the evaluators knew had been deemed technically acceptable by other VISNs.

- By relaxing Section 5.7.3 for Picis but not for CliniComp, VISN 9 has engaged in unequal treatment in violation of the Competition In Contracting Act.

68. CliniComp also seeks a declaration of its rights as they relate to the subject procurement, including, without limitation, a declaration that the Government should award CliniComp the contract, as it provided the lowest price technically acceptable bid.

69. Without the requested declarations, the Government will continue to jeopardize CliniComp's business and interests.

### Count VII: Preliminary and Permanent Injunction

70. CliniComp realleges the preceding factual allegations as if fully set forth herein. In and before September 26, 2013, and continuing to the present time, the Government has engaged in certain wrongful acts or omissions as discussed above, including, without limitation, (1) declaring that CliniComp's VISN 9 ICU CIS proposal was technically unacceptable, and (2) awarding the contract to Picis, Inc.

71. The wrongful acts or omissions previously taken by the Government were arbitrary, capricious, irrational, or otherwise not in accordance with law. This wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable

injury to CliniComp, including, without limitation, the loss of significant revenues, lost profit, lost work, the possible loss of employees, and the loss of opportunity to remain involved for this and other similar procurements; therefore, CliniComp requests the Court enter preliminary and permanent injunctions providing CliniComp with equitable and statutory relief.

72. Specifically, CliniComp requests that preliminary and permanent injunctions be granted enjoining and restraining the Government and, as applicable, its collective and respective departments, agencies, agents, servants, employees, officers, attorneys, and those persons in active concert or participation with any of them from, directly or indirectly, awarding the contract to Picis, Inc. and directing the Government to suspend Picis's performance of any contract pending resolution of this protest.

73. CliniComp has a likelihood of success on the merits. CliniComp has been, and will be, directly harmed by the Government's improper actions. But for VA's unreasonable determination, CliniComp would have been awarded the VISN 9 ICU CIS contract, and would be performing and earning money today.

74. Neither the Government nor Picis will be comparably harmed either by waiting this Court's decision or by the imposition of injunctive relief. Further, the public has a strong interest in assuring that federal procurements are conducted fairly and correctly. This procurement was not conducted in a manner fully compliant with the laws.

75. The motion for preliminary injunction and memorandum of law in support of the motion for a preliminary injunction filed by CliniComp states in more detail the grounds and substantive arguments upon which CliniComp is entitled to injunctive relief. The grounds, authorities, argument, and all other matters contained or referenced in said brief are hereby adopted and incorporated by reference into this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, CliniComp respectfully requests the Court enter a judgment for CliniComp and against the United States as follows:

A. for the preliminary and permanent injunctive relief identified above, including an injunction precluding the VA from awarding the contract to Picis, Inc. and directing the Government to suspend Picis's performance of any contract pending resolution of this protest;

B. declaring that VA's decision that CliniComp's quote was technically unacceptable lacked a reasonable basis;

C. declaring that VA's decision that CliniComp was not the lowest price offeror with a technically acceptable bid lacked a rational basis;

D. declaring that the decision of the VISN 9 Contracting Officer to have a competitive range of one offeror cannot withstand close scrutiny;

E. declaring that the VISN 9 Contracting Officer did not engage in meaningful discussions;

F. declaring that it was an abuse of discretion for the VISN 9 Contracting Officer to abruptly and prematurely terminate discussions in light of the fact that the VA paid a 49% premium instead of selecting Plaintiff's ICU CIS that the contracting officer knew had been deemed technically acceptable by other VISNs.

G. declaring that the relaxing of Section 5.7.3 for Picis but not for CliniComp constituted unequal treatment in violation of the Competition In Contracting Act.

H. awarding CliniComp its fees, including reasonable attorneys' fees, court costs, interest, proposal preparation expenses, and expenses in prosecuting this action or as otherwise recoverable; and

I.    for such other and further relief to which CliniComp may show itself to be justly entitled at law or in equity.

Dated: March 5th, 2014.

*[signature]*

Richard J.R. Raleigh, Jr.
Jerome S. Gabig, Jr.
**WILMER & LEE, P.A.**
100 Washington Street, Suite 200
Huntsville, Alabama 35801
Telephone:  (256) 533-0202
Facsimile:   (256) 533-0302
E-mail:      rraleigh@wilmerlee.com
             jgabig@wilmerlee.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the above and foregoing was sent on the 5th day of March, 2014, via facsimile and/or e-mail, and by First Class U.S. Mail, postage prepaid, to:

U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW, 8th Floor
Washington, DC 20530
Facsimile: (202) 305-2062
Electronic Mail:   nationalcourts.bidprotest@usdoj.gov

Department of Veterans Affairs
Attention: Shawn Hendricks
Network Contracting Office NCO9
1639 Medical Center Parkway, Suite 400
Murfreesboro, Tennessee 37129
Electronic Mail:   Shawn.Hendricks@va.gov

Picis, Inc.
Attention: Scott Iverson, Chief Operating Officer
100 Quannapowitt Parkway, Suite 405
Wakefield, MA 01880
Facsimile: (781) 557-3140

Richard J.R. Raleigh, Jr.