ORIGINAL

FILED

MAR   6 2014

U.S. COURT OF
FEDERAL CLAIMS

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CLINICOMP INTERNATIONAL, INC.** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.** ___14-  188C |
| | ) **Bid Protest** |
| **THE UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIONS

COMES NOW Plaintiff CliniComp International, Inc. ("CliniComp" or "CCI"), a Delaware corporation, by and through the undersigned counsel, and hereby files this Memorandum of Points and Authorities in Support of its Motion for Preliminary and Permanent Injunctions.

### I.   QUESTION PRESENTED.

Should the Court of Federal Claims grant injunctive and declaratory relief, declaring the award of Solicitation RFQ VA249-13-Q-1015/GSA RFQ828855 by the U.S. Department of Veterans Affairs to Picis, Inc. to have been made in an irrational manner constituting action that was arbitrary, capricious, or an abuse of discretion or otherwise not in accordance with the Competition In Contracting Act?

### II.   STATEMENT OF THE CASE.

This controversy is centered around the United States Department of Veterans Affairs ("VA") making a determination that CliniComp's proposal in response to RFQ VA249-13-Q-

1015/GSA RFQ828855 was "technically unacceptable." The VA has twenty-one Veterans Integrated Services Networks ("VISNs"). VISN 9 consists of portions of Tennessee, West Virginia, and Kentucky. VISN 9 issued RFQ VA249-13-Q-1015/GSA RFQ828855. The Request for Quotation ("RFQ") was for an unlimited, perpetual, non-exclusive software license for an Intensive Care Unit Clinical Information System ("ICU CIS") for seven VISN 9 medical treatment facilities.

VISN 9 informed CliniComp that its quote was rated "Technically Unacceptable" because CliniComp supposedly took exception to Section 5.7.3 of the System Specification in Attachment D of the RFQ. VISN 9 is factually mistaken. In its proposal, CliniComp said "Yes" that its ICU CIS complied with Section 5.7.3. In discussions, CliniComp made clear that its ICU CIS would save viewable wave forms. Specifically, ClinComp informed VISN 9 that "Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record." Hence, CliniComp proposed an ICU CIS that complied with the mandatory requirements. Moreover, Plaintiff has previously provided compliant ICU CIS software to other VISNs. (Declaration of Mr. McDonald, Complaint Exhibit A, paragraph 5). The VISN 9 contracting officer was aware of this fact that was too close at hand to ignore.

In summary, VISN 9's decision that CliniComp's proposal was "technically unacceptable" was arbitrary, capricious, or an abuse of discretion and there is a strong likelihood of Plaintiff's success on the merits. Moreover, CliniComp is suffering immediate and irreparable injury, including the loss of potential profits from a government contract. It is in the public's interest to preserve the integrity of the procurement process by requiring the government to follow its procurement statutes, regulations, and rules. Moreover, here the United States substantially overpaid, which obviously is not in the public's interest. Finally, a balance of

hardship on all the parties should lead this Honorable Court to find that Plaintiff will be substantially harmed if this Court does not suspend Picis's performance of the contract pending resolution of CliniComp's protest of the award to Picis, while Picis, who has only recently been awarded the contract will suffer little harm in suspending its work if CliniComp does not prevail. If CliniComp does prevail, then Picis should not have been awarded the contract.

### III.    FACTUAL BACKGROUND.

#### PLAINTIFF CLINICOMP INTERNATIONAL, INC.

CliniComp is a privately-held corporation that develops mission critical electronic medical record solutions for hospitals, integrated delivery networks, academic medical centers and other acute care providers. See Declaration of Mr. McDonald, Complaint Exhibit A, paragraph 1. CliniComp has its principal place of business in San Diego, California. Id. CliniComp was one of the two offerors who responded to Request for Quotation VA249-13-Q-1015/GSA RFQ828855, a RFQ for an unlimited, perpetual, non-exclusive software license for an Intensive Care Unit Clinical Information System ("ICU CIS") for seven VISN 9 medical treatment facilities. (Declaration of Mr. McDonald, Complaint Exhibit A, paragraph 4).

#### INTENSIVE CARE UNIT CLINICAL INFORMATION SYSTEM SOLICITATION AND AWARD

The United States, acting by and through the United States Department of Veterans Affairs, did not select CliniComp, who was the lowest bidder by more than 49%. (See Declaration of Mr. McDonald, Exhibit A, paragraph 24). CliniComp would have been selected for award of the contract (as it has for many others like it in the past) but for the actions and omissions of the Government. (See Declaration of Mr. McDonald, Exhibit A, paragraph 21). The United States awarded the contract to Picis, Inc., who was wrongfully determined by the United States to be the offeror with the "Lowest Price Technically Acceptable." (See

Declaration of Mr. McDonald, Exhibit A, paragraph 23).   The value of the contract is $4,651,415.

CliniComp is an "interested party" pursuant to 28 U.S.C. § 1491(b)(1), because it submitted a quotation in response to solicitation RFQ VA 249-13-Q-1015 / GSA RFQ82885, and but for the fact that the United States lacked a reasonable basis for determining that CliniComp's quote was technically unacceptable, award would have been made to CliniComp as the lowest price offeror, with the only other bidder offering a price exceeding CliniComp's offer by more than $1.5 million, or about 49% higher. See Declaration of Mr. McDonald, Exhibit A, paragraph 24. CliniComp timely submitted an Agency Level Protest on October 7, 2013. Declaration of Mr. McDonald, Exhibit A, Exhibit 3. The agency-level protest was dismissed in part and denied in part by VA's letter of January 24, 2014 which was received by CliniComp on February 3, 2014. Declaration of Mr. McDonald, Exhibit A, Exhibit 4.

### CLINICOMP'S BACKGROUND IN CLINICAL COMPUTING AND SOFTWARE

CliniComp's Essentris® EMR suite was originally built to meet the clinical workflow challenges of the most demanding critical care environments where it pioneered the integration of computer-based clinical documentation and medical device integration almost three decades ago. (See Declaration of Mr. McDonald, Exhibit A, paragraph 27).   Today, CliniComp's Essentris® EMR suite is deployed enterprise-wide in leading health care facilities and supports safer and more efficient patient care across the Private, Military and Veterans health care sectors. (Id.).   In 2009, CliniComp was selected by the United States Department of Defense to be the inpatient clinical documentation provider for the Military Health System. (Id.).

### CLINICOMP'S PRIOR CONTRACTS WITH VA FOR CLINICAL INFORMATION SYSTEM (CIS) PROJECTS

CliniComp is the selected ICU CIS clinical documentation system at 39 VA health care facilities, pursuant to contracts with 7 different VISNs, and 58 U.S. Department of Defense hospitals. (See Declaration of Mr. McDonald, Exhibit A hereto). In fact, recently, CliniComp was awarded VA's Contract VA241-13-C-0231 (Contract Award Date: September 27, 2013), which is a contract to provide the VA ICU CIS for another one of the VA's Veterans Integrated Service Networks. (See Declaration of Mr. McDonald, Exhibit A, paragraph 28). Clinical Information Systems (CISs) are integrated computer-based clinical documentation systems, which help medical care providers with regard to entering, storing, and accessing patient data. (See Declaration of Mr. McDonald, Exhibit A, paragraph 30).

### RFQ VA249-13-Q-1015 / GSA RFQ 828855

On September 17, 2013, the VISN 9 Contracting Office 9 in Murfreesboro, Tennessee issued solicitation, RFQ VA249-13-Q-1015. The RFQ requested quotes for the VISN 9 ICU CIS Project, a project to provide clinical information systems for the intensive care units with VISN 9. VISN 9 is an integrated healthcare delivery system comprised of medical centers in West Virginia, Kentucky, and Tennessee. (See Declaration of Mr. McDonald, Exhibit A, paragraph 4).

RFQ VA249-13-Q-1015 was a request for quotes to provide an end-to-end, turnkey solution throughout the medical centers of VISN 9, whereby the contractor awarded the contract would furnish hardware and software with warranty, Bill of Material (BOM), and perpetual licenses conforming to the requirements of a robust, scalable, integrated solution.

The solicitation consisted of a 66-page narrative Statement of Work (SOW) and 12 separate attachments. Overall, the solicitation contained hundreds of technical requirements. (Id.). This solicitation, like other solicitations issued by thirteen other VA Integrated Service

Networks since 2009 from ICU CISs, included certain national requirements mandated by VHA, but VISN 9 also added a few additional mandatory requirements to the System Specification Attachment D national template. Section 5.7.3 was one of those requirements that was added. Of the thirteen other mentioned solicitations, CliniComp has won seven awards. (Id.).

CliniComp was very familiar with VA ICU CIS proposals and the underlying requirements. On September 27, 2013, VA had awarded CliniComp a contract, Contract VA241-13-C-0231, to provide a CIS to VISN 1 (the VISN for Massachusetts, Rhode Island, Maine, Vermont, and Connecticut) for its ICU. (See Declaration of Mr. McDonald, Exhibit A hereto).

**THE DISPUTE**

VISN 9 evaluated CliniComp's quote as "Technically Unacceptable" because CliniComp supposedly took exception to Section 5.7.3 of the System Specification in Attachment D of the RFQ. (See Declaration of Mr. McDonald, Exhibit A, paragraph 7).

Section 5.7.3 of the System Specification stated:



| 5.7.3 | Display and store waveforms from patient monitors | Vendor shall demonstrate product will receive and import digital images of waveforms as well as document all wave forms produced by both the physiological patient monitor and the peripheral devices used in VISN 9. Wave forms shall be recorded not only as data points but also as a viewable wave form. The viewable wave forms are to be saved in CPRS as part of the patient record. | |

CliniComp's proposal responded to section 5.7.3 as follows:

"Yes. Waveforms from bedside devices are streamed continuously to CCI data acquisition equipment. This data subsequently can be saved permanently on the CIS. If the VA wishes to redundantly export waveform data to CPRS, a quotation could be provided. This quotation would require mutually agreed upon specifications."

The day after proposals were received, the VISN 9 contracting officer opened discussions by telephonically asking questions to Mr. Rocky McDonald, CliniComp's Director of Finance. Concerning a question about Section 5.7.3, Mr. McDonald responded in an email dated September 26, 2013.

In his September 26, 2013 email, Mr. McDonald responded to the question concerning Section 5.7.3 as follows:

> Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record. If the VA requires the patient record, including "viewable waveforms" to be sent to the CPRS, then DSS is the only currently approved methodology to do so. DSS does not presently support an interface to receive "viewable waveforms" contained in the patient record. If VISN 9 arranges for DSS to provide any interface, based on mutually agreeable standard technical specifications, then CliniComp, Intl. will provide for sending the waveforms in the patient records to DSS for transmittal to CPRS. This interface would be made available at no additional cost to the VISN. Alternatively, CliniComp, Intl. could develop an interface directly to CPRS if authorized by the VA. This was the alterative being addressed in CliniComp, Intl. original response. This would require mutually agreed upon specifications and a quotation for additional costs, depending on the specifications. For example, CliniComp, Intl. could provide, at no charge, the ability to export "viewable waveforms" as PDFs. Again, this is assuming that VA approves a direct interface to receive PDFs.

See Declaration of Mr. McDonald, Exhibit A, paragraph 14.

As shown above, the VISN 9 finding that CliniComp's proposal was technically unacceptable because CliniComp took exception to Section 5.7.3 was arbitrary, capricious and an abuse of discretion.   In its proposal, CliniComp said "Yes" that its ICU CIS complied with Section 5.7.3.   In discussions, CliniComp made clear that its ICU CIS would save viewable wave forms.  Specifically, ClinComp informed VISN 9 that "Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record." (See Declaration of Mr. McDonald, Exhibit A, paragraph 14).

7

CPRS is an acronym.  According to the solicitation, CPRS means "Computerized Patient Record System, a graphic user interface (GUI) to display Vista patent information."  RFQ at p. 27.

## IV.   POINTS AND AUTHORITIES FOR FOUR GROUNDS FOR PROTEST.

### GFP/Count I:  The Determination Of "Technically Unacceptable" Was Arbitrary, Capricious, And An Abuse Of Discretion

The facts set forth above speak for themselves that the VISN 9 decision of "technically acceptable" for CliniComp's ICU CIS was arbitrary, capricious and an abuse of discretion.  In its proposal, CliniComp said "Yes" that its ICU CIS complied with Section 5.7.3.  In discussions, CliniComp made clear that its ICU CIS would save viewable wave forms.  Specifically, ClinComp informed VISN 9 that "Waveforms are charted and stored on the CliniComp, Intl. CIS as a part of the official patient record."  (See Declaration of Mr. McDonald, Exhibit A, paragraph 14).

The standard of review by the United States Court of Federal Claims for bid protests is whether the agency procurement actions should be set aside when the actions are arbitrary, capricious, or an abuse of discretion:

> Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D) (2000) FN7; see also Bannum, Inc. v. United States, 404 F.3d at 1351 ("[T]he inquiry is whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " (quoting 5 U.S.C. § 706(2)(A) (2000))). In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit has discussed specifically subsections (2)(A) and (2)(D) of 5 U.S.C. § 706. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n. 5; see also NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed.Cir.2004) ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act

('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000).") (citations omitted)....

Chant Engineering Co., Inc. v. United States, 75 Fed. Cl. 62 (2007).

Matching the inescapable conclusion that the VISN 9's decision of "Technically Unacceptable" was arbitrary, capricious and an abuse of discretion with the standard of review by this Court for agency procurement actions, the result should be a finding in favor of CliniComp on GFP/Count I of its Complaint.

In interpreting the single sentence in 5.7.3 which states "[t]he viewable wave forms are saved in CPRS as part of the record," VISN 9 adopted a latent, literalist interpretation. A literal interpretation is nonsensical because the CPRS is a GUI. Data cannot be saved to a GUI. See Expert Statement of Dr. Rosendale, Complaint Exhibit B ("CPRS is a GUI on VistA. CPRS is a user interface to VistA, which is the official "System of Record" for patient records. As one would expect of a GUI, no permanent data about a patient is stored or saved directly to CPRS per se, but rather the GUI provides the user means for viewing the patient data in VistA.")

The Court of Federal Claims will reject a literal interpretation of a contract provision where such an interpretation is nonsensical and would not be derived from the contract language by a reasonably intelligent person acquainted with the contemporary circumstances. See generally, Reliable Bldg. Maintenance Co. v. United States, 31 Fed. Cl. 641 (1994) ("Although this is a literal interpretation of the provision, such an interpretation is nonsensical and would not be derived from the contract language by a 'reasonably intelligent person acquainted with contemporary circumstances.' *[citation omitted]*.)

Succinctly put, VISN 9 cannot use a literal interpretation of Section 5.7.3 to escape a finding that its determination of CliniComp's proposal as technical unacceptable was arbitrary and capricious since the literal interpretation is nonsensical and would not be enforced by the Court of Federal Claims as shown in Reliable Bldg. Maintenance Company, supra.

In summary, CliniComp's quote was technically acceptable and offered to meet VISN 9's requirements. CliniComp's ICU CIS systems have done exactly that at other VA VISN's. (Id.). The VA should have awarded CliniComp the contract, as it provided the lowest price technically acceptable bid. Instead, the VA paid a 49% premium to Picis rather than select CliniComp's ICU CIS that the contracting officer knew has been deemed technically acceptable by other VISNs. The VA's decision severely, immediately, and irreparably jeopardizes CliniComp's business and interests.

Plaintiff contends that the contracting official's knowledge that other VISNs have found CliniComp's ICU CIS to be compliant is too close at hand to be ignored. The "too close at hand to ignore" doctrine is followed by the GAO. See Nuclear Production Partners, LLC, B-407948, April 29, 2013 ("Our Office has recognized that, in evaluating an offeror's past performance, an agency not only may, but must, consider certain information that is 'simply too close at hand' to ignore"). The doctrine has also been recognized by this Court. See generally, Vanguard Recovery Assistance v. United States, 99 Fed. Cl. 81 (2011) ("application of the 'too close at hand to ignore' doctrine, where a court may well have to look outside the agency record to determine tentatively what, if anything, the agency had in hand but did not consider, as this case illustrates."). Applying the "too close at hand" doctrine to the present facts further supports a finding that the VISN 9 decision that CliniComp's ICU CIS was technically unacceptable was arbitrary and capricious.

**GFP/Count II:  The Decision Of The VISN 9 Contracting Officer To Have A Competitive Range Of One Offeror Cannot Withstand Close Scrutiny**

The facts are beyond contention that, by finding CliniComp's proposal technically unacceptable, the VISN 9 Contracting Officer reduced the competitive range to one offeror. This Court reviews with close scrutiny agency decisions to leave only one offeror in the competitive range. The close scrutiny is derived from the Competition In Contracting Act which compels the Court to ascertain if the procurement was conducted "in a manner designed to achieve full and open competition." Bean Stuyvesant, LLC v. United States, 48 Fed. Cl. 303 (2000).   Hence, "when the government official establishes a competitive range of one offeror, the decision is subject to close scrutiny." Bean Stuyvesant, LLC, supra.

The VISN 9 decision to reduce the competitive range to PICIS' proposal cannot withstand close scrutiny for the following reasons:

1.  The procurement was delayed to the end of the fiscal year because of poor procurement planning.

2.  The VISN 9 misperception that CliniComp had taken exception to Section 5.7.3 could have been avoided if the Contracting Officer had not abruptly and prematurely terminate discussions rather than honoring his commitment to a follow-on telephonic conference call.

3.  It is reasonable to conclude that the abrupt and premature termination of discussion was caused by pressure to award the contract before the end of the Federal fiscal year.

4.  The VA paid a 49% premium (e.g., wasting $1,500,000 in taxpayers' money) in its rush to enter into a contract before the end of the federal fiscal year.

Based on the four factors above, the competitive range of one cannot withstand close scrutiny.

### GFP/Count III:  VISN 9 Contracting Officer Did Not Engage In Meaningful Discussions

The VA's response to CliniComp's Agency Protest provided CliniComp with the following reason for rejected CliniComp's proposal as technically unacceptable: "The response clearly took exception to the Agency's requirement, thereby rendering CliniComp's quote/proposal technically unacceptable."   (See Declaration of Mr. McDonald, Exhibit A, Exhibit 4.).

However, if the VA perceived CliniComp had taken exception to the proposal, the VA should have told CliniComp of this concern during discussions.   According to the Court:

> The law is well-settled that discussions between a contracting officer and offerors must be meaningful. See, e.g., Advanced Data Concepts v. United States, 43 Fed.Cl. 410, 422 (1999), aff'd, 216 F.3d 1054 (2000); Biospherics, Inc., 2000 WL 1009497, *4 (Comp.Gen. Jul.13, 2000) ("The statutory and regulatory requirement for discussions with all competitive range offerors ... means that such discussions must be meaningful"); CRAssociates, Inc., 2000 WL 365909, *5 (Comp.Gen. Mar.15, 2000) ("It is a fundamental precept of negotiated procurement that discussions, when conducted, must be meaningful").FN9 To be meaningful, discussions must include sufficient information "as to the areas in which [the offerors'] proposals are believed to be weak so that the offerors have a reasonable opportunity to address those areas of weakness which could have a competitive impact." Bionetics Corp., 1998 WL 951702 *3 (Comp.Gen. Oct.14, 1998). An agency's failure to advise an offeror, in some way, of material proposal deficiencies vitiates the meaningfulness of the discussions.

Dynacs Engineering Company v. United States, 48 Fed. Cl. 124 (2000).

According to the GAO, "[a]n agency may not mislead an offeror through the framing of a discussion question into responding in a manner that does not address the **agency's actual concerns**, or otherwise misinform the offeror concerning a problem with its proposal." Nexant,

Inc., B-407708, January 30, 2013 (emphasis added).   The rule expressed in Nexant is highly applicable to the present facts.   VISN 9 failed in its discussions with CliniComp to identify its actual concern about an exception being taken to Section 5.7.3.  As explained by Mr. McDonald in his declaration:

> 18. At no time during discussions did Mr. Hendricks tell me that, because of the CliniComp response to Section 5.7.3, he regarded CliniComp's proposal to be technically unacceptable.
>
> 19. At no time during discussions did Mr. Hendricks tell me that, because of the CliniComp response to Section 5.7.3, he regarded CliniComp's proposal as having taken exception to the requirement.
>
> 20. If, during discussions Mr. Hendrick's had told me that VISN 9 perceived CliniComp's proposal as taking exception to Section 5.7.3, I would have made it abundantly clear that CliniComp intended – and would – fully comply with Section 5.7.3. Moreover, if aware of VISN 9's concern, CliniComp would have removed any language in its proposal that formed the basis for the VISN 9 misperception that CliniComp was taking exception to Section 5.7.3.

McDonald Declaration at paragraphs 17-20.

In summary, there would be no protest today if VISN 9 had complied with its duty to engage in meaningful discussions by informing CliniComp of the evaluators' actual concerns. Consistent with the GAO's decision in Nexant, because VISN 9 failed to tell CliniComp of its actual concern that CliniComp had taken exception to Section 5.7.3, the Court of Federal Claims should sustain Grounds for Protest # III.

**GFP/Count IV:  It Was An Abuse Of Discretion For The VISN 9 Contracting Officer To Abruptly and Prematurely Terminate Discussions In Light Of The Fact That The VA Paid A 49% Premium Instead Of Selecting CliniComp's ICU CIS That The Contracting Officer Knew Has Been Deemed Technically Acceptable By Other VISNs**

The content and extent of discussions is generally within the discretion of a contracting officer.  However, occasionally a contracting officer exercises such poor judgment that the decision is properly determined to be an abuse of discretion.  An example of such an abuse of discretion occurred in BCPeabody Construction Services, v. United States, 112 Fed. Cl. 502 (2013).  The protest involved the United States Army Corps of Engineers seeking drainage construction in Okeechobee County, Florida.  The evaluation criteria stated that award was to be made to the lowest price technical acceptable offeror.  The awardee's price was $4,783,688.00, which was more than $1,000,000 greater than BCPeabody's price.

BCPeabody and the awardee both proposed to use the same firm, Bauer, for cutoff wall construction. BCPeabody mistakenly submitted two copies of the same document to show Bauer's experience and capability for two sub elements. The contracting officer determined BCPeabody's proposal was unacceptable because of the missing document. But, the contracting officer did not point out BCPeabody's mistake or request clarification. The contracting officer evaluated the awardee's proposal as acceptable, because the contracting officer knew that Bauer had the necessary experience under the two sub elements.  Judge Lettow held that "the contracting officer in this case abused her discretion." Id.  This Court enjoined the performance of the contract by the awardee and directed the United States Army Corps of Engineers to return BCPeabody to the competitive range and to reevaluate the proposals.

The parallel between this Court's decision in BCPeabody and the facts involved in CliniComp's case are striking. The award in BCPeabody was for $4,783,688; and the award to Picis was for $4,651,415. Here, the waste of taxpayers' money, because of the abuse of discretion, was $1,537,244. In both instances, the amount of agency effort (if the United States had engaged in meaningful discussions) to permit the excluded offeror's proposal to become technically acceptable, was minimal. Just as the Court determined that the United States Army Corps of Engineers contracting officer had abused her discretion, so too the Court should determine that the VISN 9 Contracting Officer abused his discretion here.

### GFP/Count V: By Relaxing The Requirement For Picis That The Wave Forms Are To Be Saved To The CPRS GUI But Not Relaxing The Requirement For CliniComp, VISN 9 Engaged In Unequal Treatment

CPRS is an acronym. According to the solicitation, CPRS means "Computerized Patient Record System, a graphic user interface (GUI) to display Vista patent information." RFQ at p. 27.

Wave forms cannot be saved to a GUI. See Expert Statement of Dr. Rosendale, Complaint Exhibit B ("CPRS is a GUI on VistA. CPRS is a user interface to VistA, which is the official "System of Record" for patient records. As one would expect of a GUI, no permanent data about a patient is stored or saved directly to CPRS per se, but rather the GUI provides the user means for viewing the patient data in VistA.")

In awarding the contract to Picis, VISN 9 relaxed the requirement of Section 5.7.3 that wave forms are to be save to the CPRS GUI. Conversely, VISN 9 did not relax the requirement of Section 5.7.3 for CliniComp but instead held CliniComp's proposal technically unacceptable based on Section 5.7.3. (See Declaration of Mr. McDonald, Exhibit A, Exhibit 1). By relaxing

the requirement that the wave forms are to be saved to the CPRS GUI for Picis but not for CliniComp, VISN 9 has engaged in unequal treatment.

Unequal treatment of the offerors violates the Competition In Contracting Act requirement to "obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 3301(a)(1). In L-3 Communications EOTech, Inc. v. United States, 83 Fed. Cl. 643 (2008), the Court of Federal Claims found that "a relaxation of the requirement that the purchased optic withstand 6,000 rounds of live firing without physical damage." The Court gave the following explanation for sustaining the protest:

> In doing so, the Army would inhibit the full and open competition required by 10 U.S.C. § 2305(a)(1)(A)(i), and is acting in an arbitrary and capricious manner. As this court and GAO have repeatedly held, an "agency's failure to follow the terms of its own Solicitation and selection of an offeror based upon different requirements than those imposed upon the only other offeror[s] are quintessential examples of conduct which lacks a rational basis." Hunt Building, 61 Fed.Cl. at 273 (citation omitted); see also PGBA, LLC v. United States, 60 Fed.Cl. 196, 207 (noting that a certain level of "uneven treatment goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of the agency's discretion") (citations omitted), aff'd, 389 F.3d 1219 (Fed.Cir.2004); Sperry Marine, Inc., B-227106, B-227106.2, 87-2 CPD ¶ 241, 1987 WL 102805 (Comp.Gen. Sept. 14, 1987) (upholding protest because the Navy relaxed two mandatory performance requirements for one offeror only).

Applying L-3 Communications EOTech, Inc. to the present facts, just as the Court sustained a protest for relaxing a requirement for the sole offeror in the competitive range, so too the Court should sustain GFP # 5 for VISN 9's relaxing the requirement in Section 5.7.3 to save wave forms to a GUI for PICIS but not for CliniComp.

## VI.    STANDARD OF PRELIMINARY INJUNCTION & RELIEF REQUESTED.

### LEGAL STANDARD FOR PRELIMINARY INJUNCTION

With respect to a request for preliminary injunctive relief in a bid protest case, this Court considers (1) the protester's likelihood of success on the merits of the complaint, (2) whether the protester will suffer irreparable harm if the procurement is not enjoined, (3) whether the balance of hardships tips in the protester's favor, and (4) whether a preliminary injunction will be contrary to the public interest. See, e.g., DSD Labs., Inc. v. United States, 46 Fed. Cl. 467, 480 (2000), 42 GC ¶ 180. Although no one factor is dispositive, see, e.g., ES-KO, Inc. v. United States, 44 Fed. Cl. 429, 432 (1999), the Court has stated that it is well-settled that a protester must satisfy every element of the four-part test. See Aero Corp., S.A. v. United States, 38 Fed. Cl. 237, 242 (1997). In ruling on CliniComp's motion for a preliminary injunction, the Court should consider the evidence contained in the motion and this memorandum, as well as evidence presented at a hearing on the motion, including testimonial evidence. See RCFC app. H.

### RELIEF REQUESTED

As explained hereinabove, the United States, by and through the U.S. Department of Veterans Affairs, VISN 9, has engaged in certain wrongful acts or omissions, including, without limitation, declaring that CliniComp's VISN 9 ICU CIS proposal was technically unacceptable. The United States's wrongful acts or omissions were arbitrary, capricious, an abuse of discretion and violated the Competition In Contracting Act. Unless and until enjoined and restrained by order of this Court, the wrongful award to Picis will cause great and irreparable injury to

17

CliniComp, including, without limitation, the loss of significant revenues, lost profit, lost work, and the loss of opportunity to remain involved for this and other similar procurements (See Declaration of Mr. McDonald, Exhibit A, paragraph 22).   Therefore, CliniComp requests the Court enter preliminary and permanent injunctions providing CliniComp with equitable and statutory relief.   Specifically, CliniComp requests that preliminary and permanent injunctions be granted enjoining and restraining the Veterans Administration and those persons in active concert or participation with the Veterans Administration from, directly or indirectly, awarding the contract to Picis, Inc. and directing the Veterans Administration to suspend Picis's performance of any contract pending resolution of this protest.

CliniComp has a likelihood of success on the merits.   CliniComp has been, and will be, directly harmed by the Government's improper actions.   (See Declaration of Mr. McDonald, Exhibit A, paragraph 22).   But for VA's unreasonable determination, CliniComp would have been awarded the VISN 9 ICU CIS contract, and would be performing and earning money today. It has been "repeatedly held that the loss of potential profits from a government contract can constitute irreparable harm."   See BCPeabody Construction Services, Inc. v. United States, 112 Fed. Cl. 502 (2013), citing Furniture by Thurston v. United States, 103 Fed. Cl. 505, 520 (2012). Neither the Government nor Picis will be comparably harmed either by waiting this Court's decision or by the imposition of injunctive relief.   Further, the public has a strong interest in assuring that federal procurements are conducted fairly and correctly.   See, DGR Associates, Inc. v. United States, 94 Fed. Cl. 189 (2010).   This procurement was not conducted in a manner compliant with the laws.

## V.     CONCLUSION.

For all of the above reasons, Plaintiff CliniComp International, Inc. respectfully requests that this Court grant injunctive and declaratory relief, prevent the U.S. Department of Veterans Affairs from proceeding with the contract, and direct award to CliniComp International, Inc.

Dated: March 5th, 2014.

Respectfully submitted,

Richard J.R. Raleigh, Jr.
Jerome S. Gabig, Jr.
**WILMER & LEE, P.A.**
100 Washington Street, Suite 200
Huntsville, Alabama 35801
Telephone:     (256) 533-0202
Facsimile:      (256) 533-0302
E-mail:          rraleigh@wilmerlee.com
                 jgabig@wilmerlee.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of Plaintiff's Motion for Preliminary and Permanent Injunctions to be served on this 5th day of March, 2014, to the following parties:

U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW, 8th Floor
Washington, DC 20530
Facsimile: (202) 305-2062
Electronic Mail:     nationalcourts.bidprotest@usdoj.gov

19

Department of Veterans Affairs
Attention:  Shawn Hendricks
Network Contracting Office NCO9
1639 Medical Center Parkway, Suite 400
Murfreesboro, Tennessee 37129
Electronic Mail:      Shawn.Hendricks@va.gov

Picis, Inc.
Attention: Scott Iverson, Chief Operating Officer
100 Quannapowitt Parkway, Suite 405
Wakefield, MA 01880
Facsimile: (781) 557-3140

U.S. Department of Justice
Commercial Litigation Branch, 8th Floor
1100 L St, N.W.
Washington, DC 20530
Fax:     202-514-8624

Richard J.R. Raleigh, Jr.